IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER T. HEPLER, as Executor of the Estate of Wallace D. Hepler, Jr., Deceased, <br><br> Plaintiff <br><br> v. <br><br> TRANSAMERICA PREMIER LIFE INSURANCE COMPANY f/k/a MONUMENTAL LIFE INSURANCE COMPANY, <br><br> Defendant. | Civil No. 17-299-E |

## **O R D E R**

AND NOW, this 30th day of September, 2019, in consideration of Defendant's Renewed Motion for Judgment on the Pleadings (Doc. No. 47) and memorandum and exhibits in support thereof (Doc. Nos. 47-1 through 47-4), filed in the above-captioned matter on December 18, 2018, and in further consideration of Plaintiff's Response in Opposition and brief in support thereof (Doc. Nos. 53 and 54), filed on January 16, 2019, as well as Defendant's reply (Doc. No. 57) filed January 30, 2019 (Doc. No. 57),

IT IS HEREBY ORDERED that, for the reasons set forth herein, Defendant's Motion is GRANTED. Accordingly, Plaintiff's Amended Complaint (Doc. No. 25) is DISMISSED.

I.   **Background**

   A.   **General**

This case arises from the death of Betty Jo Hepler. At the time of Ms. Hepler's death, she was insured under Accidental Death and Dismemberment Policy No. MZ0932692H0001F, Coverage Identification No. 742323344 (the "Policy"), issued by Defendant Transamerica Premier Life Insurance Company ("Defendant" or "Transamerica"). The Policy provided accidental death benefits in the amount of $300,000.00, and Ms. Hepler's husband, Plaintiff Wallace D. Hepler, was the named beneficiary under the Policy.[1] After Ms. Hepler died, Plaintiff applied for benefits, but Transamerica denied his application on the basis that conditions other than an accident contributed to Ms. Hepler's death. After attempting to resolve the matter with Defendant, Plaintiff brought the instant action.

   B.   **Plaintiff's Original Complaint**

Plaintiff filed his original complaint on November 1, 2017. In the complaint, Plaintiff alleged that, on July 26, 2014, his wife, Ms. Hepler fell from a standing position in her home, and was later diagnosed with a right supracondylar femur fracture with posterior displacement of a distal fracture fragment. He stated that Ms. Hepler underwent an open reduction internal fixation on her right femur two days later at UPMC Hamot in Erie, Pennsylvania. After an extended stay at Hamot, she was then transported UPMC Northwest Rehabilitation Hospital on July 25, 2014. Plaintiff asserted that, because Ms. Hepler was unable to tolerate the rehabilitation program at UPMC Northwest, she was transferred to Oakwood Heights Nursing Home on July 31, 2014. She remained non-weight bearing while there and required maximum

---

[1] Wallace Hepler himself died on April 23, 2018, and has been replaced as the named plaintiff in this matter by Christopher T. Hepler, who is the Executor of Wallace's Estate. (Doc. No. 59). For the sake of clarity, and since Wallace Hepler was the named plaintiff at nearly all times relevant to this matter, the Court will refer to Wallace Hepler as "Plaintiff" herein.

assistance with her activities of daily living. She followed up with her surgeon and was found to have further displacement of the distal fracture fragment, but was deemed a non-operative candidate. Ms. Hepler died on November 24, 2014. (Complaint, Doc. No. 1 ("Compl.") at ¶¶ 16-25).

Plaintiff asserted, as discussed above, that Ms. Hepler was insured by Transamerica under the Policy for accidental death, and that he was the beneficiary. He stated that he and his wife had paid $148.50 quarterly to keep the Policy effective, as required, and that the Policy, therefore was in effect at the time of Ms. Hepler's death. (Compl. at ¶¶ 5-15). Plaintiff further asserted that his wife's accidental fall was "the precipitating factor in her death" (Compl. at ¶ 27) and sought benefits under the Policy's Insuring Clause, which provides:

> When we receive due proof that a Covered Person dies, we will pay the benefit shown on the Schedule to his named Beneficiary; provided death occurs as a direct result of an injury.

(Compl., Ex. A at 5). Injury is defined, in relevant part, as "accidental bodily injury sustained by the Covered Person, which is the direct and independent cause of Loss." (Id. at 6). Plaintiff contended that this standard was met in this instance. Transamerica denied his application, asserting that his claim was barred by the Policy's Exclusionary Clause, which provides that Transamerica "will not pay a benefit for a Loss which is caused by, results from, or contributed to by" eight specific conditions. One of these conditions is "Sickness or its medical or surgical treatment, including diagnosis." (Id. at 5). It has asserted that Ms. Hepler had a number of "sicknesses" that contributed to her death. Plaintiff asked Transamerica to reconsider, but it declined. (Compl. at ¶¶ 26-40). Plaintiff filed his complaint, attaching a number of documents, including a copy of the Policy, and a report from Todd M. Luckasevic, D.O., indicating that it was his opinion that Ms. Hepler's fall was the major contributory factor in her death.

On January 24, 2018, Defendant moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), arguing that the language of the Policy's Exclusionary Clause required Plaintiff to establish that sickness did not contribute to Ms. Hepler's death. It asserted that Plaintiff's claim that his wife's accident was a precipitating or major contributory factor to her death was insufficient to meet this standard. Plaintiff disagreed and argued that he only needed to establish that accidental causes were the proximate cause of Ms. Hepler's death. After oral argument on April 3, 2018, the Honorable Mark R. Hornak granted Defendant's motion for judgment on the pleadings, holding that the Exclusionary Clause in the Policy made this a "two-step" case which required Plaintiff to plead (and establish) more than just proximate cause.[2] Judge Hornak provided Plaintiff with 30 days to amend his complaint.[3]

### C. **Plaintiff's Amended Complaint**

Plaintiff filed his Amended Complaint, which is presently before the Court, on May 3, 2018. As with the original complaint, Plaintiff asserts in the Amended Complaint that this Court has jurisdiction pursuant to 28 U.S.C. § 1332 since the amount in controversy is in excess of $75,000.00, and there is diversity of citizenship between the parties. (Amended Complaint, Doc. No. 25 ("Am. Compl.") at ¶ 1). The factual allegations of the Amended Complaint are

---

[2] The Court here is not addressing the issue of whether this is a "one-step" or "two-step" case, as that issue has already been decided, and therefore has no need to discuss the distinction in great depth. In short, an accidental death policy that provides coverage upon proof that an accident proximately caused the injury, and that has no relevant exclusionary clause, is a one-step policy, requiring only proof of the relevant proximate cause. A policy, however, that also includes an exclusionary clause providing that other causes such as disease or sickness cannot have been found to have been contributing causes is a two-step policy, generally requiring a plaintiff to establish that the accident was the sole cause of death. See Kelley v. Pittsburgh Cas. Co., 100 A. 494 (Pa. 1917); Johnson v. Kentucky Cen. Life & Accident Ins. Co., 18 A.2d 507 (Pa. Super. 1941); Rodia v. Metro Life Ins. Co., 47 A.2d 152 (Pa. Super. 1946); Frame v. Prudential Ins. Co., 56 A.2d 76 (Pa. Super. 1947); Chebatoris v. Monumental Life Ins. Co., Civ. No. 09-224, 2010 WL 3431161 (W.D. Pa. Aug. 23, 2010).

[3] The case was subsequently re-assigned to the Honorable Susan Paradise Baxter, and from Judge Baxter to the undersigned.

substantially similar to those of the original complaint, as discussed above. (Id. at ¶¶ 5-37).[4] However, in light of Judge Hornak's prior ruling, Plaintiff raises not one but two counts for breach of contract, one for breach under a "one-step" causation standard (Count One) and one for breach under a "two-step" standard (Count Two). In Count One, while acknowledging Judge Hornak's ruling that the Policy's Exclusionary Clause makes this a two-step case, Plaintiff now alleges that "the Policy's exclusionary provision is unenforceable against the Plaintiff, as it is unconscionable, unfair and unduly restrictive and in violation of 31 Pa. Code § 90d.4." (Id. at ¶ 39). He asserts, therefore, that the Policy should be deemed to be a one-step policy, requiring only a showing of proximate cause, and he states that Ms. Hepler's accident was, in fact, the proximate cause of her death, which he contends is sufficient to establish liability.

In Count Two, Plaintiff states that Ms. Hepler died "as a direct and independent result of her accidental fall and her death was not caused by, resulted from, or contributed to by a sickness or its medical or surgical treatment, including diagnosis." (Id. at ¶ 46). While such a claim may satisfy a two-step standard, as was discussed extensively at the April 3, 2018 hearing before Judge Hornak, Dr. Luckasevic's opinion is not really consistent with such a claim. Accordingly, during an October 11, 2018 telephonic status conference with Judge Baxter, Plaintiff indicated that he was withdrawing Count Two and proceeding only under Count One. (Doc. No. 43). Defendant has renewed its motion for judgment on the pleadings.

## II. STANDARD OF REVIEW

Defendant has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), arguing that Plaintiff has failed to state a claim upon which relief may be granted. "A party may move for judgment on the pleadings after the pleadings are closed so long

---

[4] So as to account for the different legal theories discussed herein, Plaintiff asserts that Ms. Hepler's accidental fall was "the cause of her death" rather than the "precipitating" or "major contributory" factor as she had in the original Complaint. (Am. Compl. at ¶ 26).

5

as the timing of the motion does not delay trial." Garza v. Citigroup Inc., 724 Fed, Appx. 95, 98 (3d Cir. 2018) (citing Fed. R. Civ. P. 12(c)). "A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." Id. (quoting Revell v. Port Auth. of N.Y. & N.J., 598 F.3d 128, 134 (3d Cir. 2010)). In considering a Rule 12(b)(6) motion, well-pled factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the Court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)); see Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009).

While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Phillips, 515 F.3d at 231 (quoting Twombly, 550 U.S. at 555 (additional internal citation omitted)). While this standard "does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Therefore, allegations in a complaint, to survive Rule 12(b)(6), must "'state a claim for relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Id. (quoting Twombly, 550 U.S. at 555 (internal citation omitted)). Therefore, as with Rule 12(b)(6), "judgment on the pleadings is proper where the

plaintiff's factual allegations, taken as true and viewed in the light most favorable to the plaintiff, are not sufficient to state 'a claim for relief that is plausible on its face.'" Garza, 724 Fed. Appx. at 99 (quoting Twombly, 550 U.S. at 570).

In considering a Rule 12(c) motion, as with a Rule 12(b)(6) motion, a court, in general, is to focus on the four corners of the complaint itself. See Fed. R. Civ. P. 12(d); In re Tarragon Corp., No. 09-10555, 2012 WL 71597, at *3 (D. N.J. Jan. 10, 2012); Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014). However, the court may also consider matters of public record, orders, exhibits attached to the complaint, and items appearing in the record of the case. See Pension Trust Fund for Operating Engineers v. Mortgage Asset Sec. Trans., Inc., 730 F.3d 263, 271 (3d Cir. 2013) (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994)). The court can also consider documents "'integral to or explicitly relied upon in the complaint'" without converting the motion into one for summary judgment. Schmidt, 770 F.3d at 249 (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)). Accordingly:

> Courts can resolve contract disputes on a motion for judgement on the pleadings "if the claims under which the plaintiff seeks relief are barred by the unambiguous terms of a contract attached to the pleading, because the interpretation of an unambiguous contract is a matter of law for the court."

Greater N.Y. Mut. Ins. Co. v. Rudolph, Civ. No. 08-2650, 2008 WL 4710787, at *1 (E.D. Pa. Oct. 24, 2008) (quoting Jaskey Fin. & Leasing v. Display Data Corp., 564 F. Supp. 160, 163 (E.D. Pa. 1983)).

### III.   DISCUSSION

As discussed, Plaintiff's remaining claim is premised on the contention that the Exclusionary Clause of the Policy is unenforceable as unconscionable. Such a finding, Plaintiff

7

argues, would allow him to show the requisite causation under a proximate cause, rather than a sole cause standard, which he believes he can do. The starting point, of course, for the Court's analysis is the allegation of unconscionability in the Amended Complaint itself. It is brief: "Plaintiff's claim is properly brought under the 'one-step' proximate causation standard, as the Policy's exclusionary provision is unenforceable against the Plaintiff, as it is unconscionable, unfair and unduly restrictive and in violation of 31 Pa. Code § 90d.4." (Am. Compl. at ¶ 39). At first blush, this language looks a lot like "'legal conclusion couched as a factual allegation.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Indeed, there is really no factual development of this claim whatsoever. As such, this language does not satisfy the pleading standard under Rule 8.

Looking at the substantive law only further confirms this point.[5] Under Pennsylvania law, "a contract or term is unconscionable, and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it." Salley v. Options One Mortg. Corp., 925 A.2d 115, 119 (Pa. 2007). This means that the party challenging the contract must establish both procedural and substantive unconscionability. See id. Substantive unconscionability exists where the challenged contract provision unreasonably favors the party with superior bargaining power. See Clerk v. First Bank of Del., 735 F. Supp. 2d 170, 181 (E.D. Pa. 2010). Procedural unconscionability involves "the 'absence of meaningful choice on the part of one of the parties.'"

---

[5] Because the case is before this Court based on diversity jurisdiction, under the Erie Doctrine, the Court must apply the substantive law of the forum state, Pennsylvania, in resolving this dispute. See Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938); Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1046 (3d Cir. 1993). The parties do not address the choice of law issue, but it is clear that, under Pennsylvania choice of law rules, given that Plaintiff resided in Pennsylvania, the accident occurred in the Commonwealth, and the Policy were executed in the Commonwealth, that Pennsylvania law applies to the contract dispute here. See Travelers Personal Ins. Co. v. Estate of Parzych, 675 F. Supp. 2d 505, 508 (E.D. Pa. 2009) (citing Pollard v. Autotote, Ltd., 852 F.2d 67, 70 n.3 (3d Cir. 1988)).

Id. (quoting Witmer v. Exxon Corp., 434 A.2d 1222, 1228 (Pa. 1991)). This often occurs with contracts of adhesion. See id. Whether a contract is unconscionable is a question of law for the court to decide. See Salley, 925 A.2d at 120 (citing Bishop v. Washington, 480 A.2d 1088, 1094 (Pa. Super. 1984)).

Going back to the language of the Amended Complaint, Plaintiff has not really alleged any of this. Other than the conclusory statement that the contract is unconscionable, no facts are pled that would establish either substantive or procedural unconscionability. Indeed, even the bases suggested by Plaintiff in his brief establish ways in which a contract ***could be*** unconscionable, rather than ways in which the one at issue – the Policy – actually is. For instance, Plaintiff argues that exclusionary clauses are unreasonable where they provide "illusory insurance coverage," *i.e.*, they prevent the policy at issue from paying benefits under any reasonably expected set of circumstances, citing TIG Ins. Co. v. Tyco Int'l Ltd., 919 F. Supp. 2d 439, 466 (M.D. Pa. 2013), amended (Apr. 8, 2013). However, he has not pled that this is the case, nor is it apparent from the language of the Policy itself that it offers nothing but illusory coverage. Indeed, as discussed above, "two-step" policies such as this one have long been recognized under Pennsylvania law. See Kelley v. Pittsburgh Cas. Co., 100 A. 494 (Pa. 1917); Johnson v. Kentucky Cen. Life & Accident Ins. Co., 18 A.2d 507 (Pa. Super. 1941); Rodia v. Metro Life Ins. Co., 47 A.2d 152 (Pa. Super. 1946); Frame v. Prudential Ins. Co., 56 A.2d 76 (Pa. Super. 1947).

Plaintiff similarly contends that the use of overly subtle terminology or technical interpretations can render an insurance contract substantively unconscionable, citing Legion Idem. Co. v. Carestate Ambulance, Inc., 152 F. Supp. 2d 707, 714 (E.D. Pa. 2001), and DiFabio v. Centaur Ins. Co., 531 A.2d 1141, 1143 (Pa. Super. 1987). He further asserts that insurance

9

policies that utilize unusual language might be unenforceable, citing McDonald v. Keystone Ins. Co., 459 A.2d 1292, 1294-95 (Pa. Super. 1983). However, again, Plaintiff is more discussing that there are ways in which insurance contracts can theoretically be substantively unconscionable than arguing that the Policy is such a contract. Indeed, the relevant language of the Exclusionary Clause to the Policy is not the least bit technical. It certainly is not unusual; accidental death policies using similar language have been recognized in Pennsylvania for over a century. Maybe the concepts raised by Plaintiff could apply to some other contract, but they do not apply here, and Plaintiff really does not even directly claim that they do.

As for procedural unconscionability, Plaintiff relies solely on the fact that the Policy is an insurance contract, which he argues is *per se* a contract of adhesion, which renders it unconscionable. This is simply legally incorrect. Pennsylvania courts have consistently emphasized that merely because a contract is one of adhesion does not render it unconscionable. See Salley, 925 A.2d at 127; Bishop, 480 A.2d at 1094; Denlinger, Inc. v. Dendler, 608 A.2d 1061, 1067 (Pa. Super. 1992). Indeed, there is no basis under Pennsylvania law for finding that any insurance contract, simply by virtue of being one, is procedurally unconscionable. The only fact Plaintiff alleges in the Amended Complaint that would distinguish the Policy from any other insurance contract is that it allegedly contravenes 31 Pa. Code § 90d.4. However, as Defendant points out, this provision actually expressly ***permits*** exclusions for "[b]odily or mental infirmity or disease of any kind, whether or not the proximate or precipitating cause of death is accidental bodily injury." Id. at § (1)(ii).

In sum, Plaintiff essentially sets forth a conclusory claim of unconscionability and then explains ways in which the Policy could in theory be unconscionable. This is not sufficient. In fact, the claim of unconscionability itself seems to be an attempt at an end run around Judge

Hornak's finding that the Policy is a two-step contract. It is certainly an interesting attempt, but one ultimately, and clearly, not supported by any facts. As such, his claims cannot stand. Indeed, courts have routinely dismissed complaints attacking contracts as unconscionable for failure to state a claim where, as here, little more than barebones allegations and conclusory statements are offered. See, e.g., Williams v. Ocwen Loan Servicing, LLC, No. 1:14-cv-03627-SCJ-JCF, 2015 WL 13776542, at *9 (N.D. Ga. May 7, 2015); Simmtech Co., Ltd. v. Citibank, N.A., No. 13-cv-6768 (KBF), 2016 WL 4184296, at *16 (S.D.N.Y. Aug. 3, 2016); Argabright v. Rheem Manufacturing Co., 201 F. Supp. 3d 578, 596 (D. N.J. 2016).

### IV. CONCLUSION

Therefore, for the reasons set forth herein, Defendant is entitled to judgment on the pleadings pursuant to Rule 12(c), and Plaintiff's Amended Complaint will be dismissed.[6] The Court notes that, while Defendant's counterclaim seeks a declaratory judgment that it is not liable to Plaintiff under the Policy, this Order renders that request moot. The Court will, accordingly, enter final judgment in this case.

s/Alan N. Bloch<br>
Alan N. Bloch<br>
United States District Judge

ecf:    Counsel of Record

---

[6] Plaintiff has already been given leave to amend his complaint once, and it is clear that any further attempts to do so would be futile.